### CLOS and wife vs. BOPPE and others.

1. Stated generally, the law is that when the mortgagee purchases the equity of redemption of the mortgagor, his mortgage interest is extinguished. But this general doctrine is subject to qualifications. Merger is not favored in equity, and is never allowed, unless for special reasons and to promote the intention of the party.

2. Where the equities are subserved by keeping the mortgage alive, and no injury or injustice is thereby wrought, it is not extinguished.

3. Where the mortgaged premises were conveyed to a mortgagee, though not purchased by him, and he did not derive, or expect to derive, any benefit from the conveyance, and it was not his intention to have his mortgage extinguished, his interest does not merge, but the mortgage will be treated as a security for the amount advanced.

---

*Mr. L. Greiner,* for complainants.

*Mr. A. G. Sayre,* for defendant Boppe.

THE VICE-CHANCELLOR.

This cause was submitted without argument, upon the pleadings and proofs. The complainants are the holders of two mortgages which their bill is filed to foreclose; one for

$1400, dated January 17th, 1866; the other for $4000, dated September 19th, of the same year. The defendant Boppe is the holder of an intermediate mortgage, dated September 19th, 1866, for $2000, made to him by Frederick Hauesler and wife, owners of the fee. The validity of Boppe's mortgage is the controverted point in the suit, and is denied by the complainants, mainly on the ground that the mortgage became merged in and extinguished by a conveyance of the mortgaged premises, executed to Boppe by Hauesler and wife, in the month of July, 1868.

Stated generally, the law is, that when the mortgagee purchases the equity of redemption of the mortgagor, his mortgage interest is extinguished; it is said to be merged. But this general doctrine is subject to qualifications. Merger is not favored in equity, and is never allowed, unless for special reasons, and to promote the intention of the party. 4 *Kent's Com.* 102.

In *Forbes* v. *Moffatt*, 18 *Vesey* 390, a mortgage was held not to be merged by union with the fee. It was said by Sir William Grant, that a person becoming entitled to an estate subject to a charge for his own benefit, may, if he chooses, at once take the estate and keep up the charge. Upon this subject a court of equity is not guided by the rules of law. The question is upon the intention, actual or presumed, of the person in whom the interests are united. Where it is of no sort of use to a person to have the charge on his own estate kept up, there it will be held to sink, unless something shall have been done by him to keep it on foot. Upon looking into all the cases, he says, where charges have been held to merge, he finds nothing which shows that it was not perfectly indifferent to the party in whom the interests had united, whether the charge should or should not subsist; and, in that case, it sinks.

In *Starr* v. *Ellis*, 6 *Johns. Ch.* 393, Chancellor Kent states the rule to be, that the union of the two estates will create a merger, unless there be some beneficial purpose or some declared intent to prevent it. A court of equity will keep an encumbrance alive, or consider it extinguished, as

will best serve the purposes of justice and the actual and just intention of the party. It must, at all events, be an innocent purpose, and injurious to no one.

In the present case, the purpose of the conveyance to Boppe is the principal matter to which evidence is given. It is testified to by the grantors, Hauesler and wife, on the one side, and by Boppe on the other. The deed is dated the 8th, and was acknowledged on the 15th of July, 1868. Boppe says that before that time he had left the country, and was on his way to Europe; that, before he left, he had become liable for large sums, as Hauesler's endorser; that Hauesler had promised to secure him, but did not do so before he left, and that no specific security had then been arranged for; that while he was absent, the conveyance to him was executed and put upon record, and that he knew nothing of it until his return in the following November. He says that he did not purchase the property, and paid nothing towards the consideration in the deed; that while he was absent, and a few weeks after the date of the deed, Hauesler went into bankruptcy, and that on his own return, he set up no claim under the deed, which went for nothing, and that he presented, with other creditors, his demands for endorsements paid, and left the mortgaged premises to be sold by the assignee.

Hauesler and wife contradict this, and testify that Boppe was present at the execution of the deed; that it was delivered to him in person; that its object was to keep the premises from Hauesler's creditors, and that Boppe, at the same time, executed a deed for the property to Mrs. Hauesler. But this deed they do not produce. They say it was never recorded, and that it was destroyed. He denies that it ever existed. Their account of the particulars and circumstances attending the execution and delivery of the deed shows, I think, that they may have forgotten the facts as they actually occurred. The persons who were alleged to have been present, are not produced. One of them—Mr. Meeker, who took their acknowledgment—is in Europe; the others, they say, they did not know. They do not pretend that the property

was purchased by Boppe, or that it was his intention to have his mortgage extinguished, or affected by the deed. On the contrary, they admit that such was not the intent. They do not pretend that Boppe derived, or expected to derive, any benefit from the conveyance, though, if made with his knowledge, and by his instructions, it would seem probable his purpose was to protect himself against liabilities which are sufficiently shown to have been outstanding against him as Hauesler's endorser. In respect to the conveyance, their testimony is directed to the point that Boppe acted with them in transferring the title from Hauesler to his wife, in fraud of the creditors. In considering their testimony, I cannot regard it as sufficient to establish this charge, and shall therefore not consider its effect if established. Their testimony is noticeably uncertain and weak. Statements are made and recalled, or admitted to be doubtful and conjectural. Their memories are manifestly confused and unreliable. This appears in what they say of the consideration of the mortgage to Boppe for $2000. In denying that this sum was advanced by him, they are contradicted by the documentary proofs, and are clearly shown to be wrong. I am satisfied that the whole principal was advanced by him, and no part of it or of the interest appears to have been paid.

There are no equities to be subserved by holding the mortgage to have been extinguished. All the equities are against it. The complainants have been in no wise injured by the conveyance, whatever its object was; nor can any injustice be done them by allowing the defendant to recover the amount due on it for principal and interest.

I must advise such a decree.